JOSE SANTOS DIAZ vs. ELI LILLY AND COMPANY
(and a companion case[1]).

Middlesex. June 7, 1982. — September 20, 1982.

Present: HALE, C.J., GRANT, [ DREBEN, JJ.

*Evidence*, Hospital record.

At the trial of a negligence action the judge did not abuse his discretion in
instructing the jury that they could not consider opinions and diag-
noses contained in the plaintiff's hospital record as independent evi-
dence that his condition was caused by a toxic agent where the
diagnoses were not routine and involved serious difficulties of inter-
pretation, and thus did not have the presumption of reliability usually
attached to statements relating to treatment and medical history in
records admitted in evidence under G. L. c. 233, § 79. [449-455]

TORT. Writs in the Superior Court dated July 22 and
December 15, 1971, respectively.

Following the decision of the Supreme Judicial Court in
364 Mass. 153 (1973), the cases were consolidated and were
tried before *Doerfer*, J.

*Paul R. Sugarman* (*W. Thomas Smith* with him) for the
plaintiffs.

*Marshall Simonds* (*Anthony M. Feeherry & Paul E. Nem-
ser* with him) for the defendant.

DREBEN, J. The principal factual issue at trial in this neg-
ligence action was whether the defendant's product, Par-
non, was the cause of the plaintiff's blindness, more spe-
cifically, his condition of bilateral optic atrophy. While
working for a commercial rose grower, the plaintiff had
sprayed roses with Parnon, and he claimed that his loss of

---

[1] Milagros Diaz *vs.* Eli Lilly and Company, an action by the plaintiff's
wife for loss of consortium.

vision was caused by toxic agents in that product. The jury found for the defendant.

The sole issue on the plaintiff's appeal[2] is whether the trial judge erred in instructing the jury that they could not consider opinions and diagnoses contained in the plaintiff's hospital record at the Massachusetts General Hospital (MGH) as independent evidence that his condition was caused by a toxic agent. The challenged instruction is set forth in the margin.[3] We affirm and hold that where, as here, the diagnoses were not routine and involved serious difficulties of interpretation, the trial judge did not abuse his discretion in ruling that the only expert opinions the jury could consider were those of witnesses who appeared in court and were subject to cross-examination.

The plaintiff first argues that the defendant failed seasonably to object to the reading of the hospital records and thereby waived the right to request a limiting instruction. Whether there was a waiver cannot be determined from those portions of the record reproduced in the appendix, see *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684, 690-691 (1978), in view of a lobby conference at which the judge tentatively ruled that the diagnoses in the hospital records would be limited. We need not, however, decide

---

[2] The defendant has cross appealed, but in view of the result we reach on the plaintiff's appeal, we need not consider the issues raised in the cross appeal.

[3] "I have to mention some evidence that was in for a limited purpose at this point. You recall the hospital records and the various statements of doctors which were in the hospital records. That evidence was admitted for a limited purpose, admitted because various other people who were here in Court testified to you they relied on it to some degree more or less — you recall the testimony — on those statements in the hospital record. I think we had two experts for the plaintiff and three for the defendant. Those were the only live expert witnesses here in Court. Those are the only witnesses whose expert opinion you may consider as opinion evidence. The other opinions and diagnoses stated in the hospital records are admitted and were admitted only for the limited purpose of and to the extent that a particular witness here in Court relied upon those statements in reaching his conclusion. They may not be given independent force by you as opinions as to causation. So keep that distinction in mind."

the question of waiver because, in any event, the judge in his discretion and on his own motion could give a limiting instruction. See *Solomon* v. *Dabrowski*, 295 Mass. 358, 360 (1936); Liacos, Massachusetts Evidence 74 (5th ed. 1981). Cf. *Commonwealth* v. *Haley*, 363 Mass. 513, 517-519 (1973). The plaintiff's claim that he was foreclosed from presenting independent evidence of the facts contained in the hospital records is not supported by the record and appears for the first time on appeal.[4]

We turn, therefore, to the plaintiff's argument that the diagnoses in the hospital records were admissible as matter of law for all purposes under G. L. c. 233, § 79 (as appearing in St. 1959, c. 200). That statute provides for the admissibility of hospital records,[5] "so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

We put to one side, for the moment, the proviso relating to the question of liability and focus on the first portion of the statute. As pointed out in *Bouchie* v. *Murray*, 376 Mass. 524, 527-528 (1978), "the statute allows admission of the substantive content of hospital records because of the presumption of reliability which attaches to statements relating to treatment and medical history in these records . . . . In interpreting the medical records exception to determine whether certain portions of the records, which might relate to treatment and medical history, are admissible, the purpose of the statute — to admit presumptively reliable evidence without the necessity of calling numerous hospital personnel as witnesses — must be kept in mind." Not everything contained in hospital records is admissible;

---

[4] Although the plaintiff knew early on of the judge's tentative ruling, there is no suggestion in the record that he at any time indicated to the judge that he wished to present other evidence if his use of the hospital records were to be limited. See 21 Wright & Graham, Federal Practice and Procedure § 5065, at 329-330 (1977).

[5] General Laws c. 233, § 79, applies to records required to be kept under G. L. c. 111, § 70.

only those portions "relating to treatment and medical history which possess the characteristics justifying the presumption of reliability" come within the statutory exception to the hearsay rule. *Id.* at 528.

The statements in the MGH records at issue in this case include diagnoses of the plaintiff's eye condition[6] as "toxic" in origin and conclusions that the toxic agent causing the blindness was Parnon, or "insecticide" (probably a mislabel for fungicide). In their context at trial, the judge could find that these opinions did not satisfy the criteria of reliability.

Cross-examination of Dr. Gaudio, the plaintiff's expert, indicated that the plaintiff's case was a "difficult" one to interpret and that the "major factor" in his diagnosis of toxicity was "the absence of all other major" causes. Cross-examination also indicated that Dr. Gaudio was not trained as a toxicologist.[7] See *Commonwealth* v. *Seit,* 373 Mass. 83, 92 (1977).

The diagnosis of toxic etiology was sharply challenged by the defendant's expert, Dr. Lessell,[8] a professor of ophthalmology and neurology at Boston University. He based his opinion on the complaint of pain and on the fact that the onset of the condition was found first in one eye. These factors, he testified, were uncharacteristic of toxic optic

---

[6] There were also references to toxic damage to the plaintiff's liver.

[7] The hospital reference that specifically implicated Parnon was contained in a note of Dr. Gaudio. His testimony at trial, particularly on cross-examination, indicated that in his medical judgment the plaintiff's blindness was caused by Parnon. Since the material in his proffered notes, other than references to the opinions of third persons, was substantially cumulative of his trial testimony, *cf. Prifti* v. *Hendrick,* 314 Mass. 661, 662 (1943), an additional ground for supporting the judgment below is that if error was made as to Dr. Gaudio's notes, such error was harmless. To the extent that Dr. Gaudio's hospital notes contained hearsay opinions of third persons, such statements are not admissible for their substantive content under the criteria set forth in *Bouchie* v. *Murray,* 376 Mass. at 528. See also *Commonwealth* v. *Bohannon,* 385 Mass. 733, 750 (1982).

[8] We have examined his testimony and the entire testimony of Dr. Gaudio, although this material was not reproduced in the record appendix.

atrophy. He also questioned making the diagnosis by exclusion and listed several possible causes which had not been eliminated by the tests administered at the MGH. In about seven percent of the cases he had observed during a certain time period, the cause of optic atrophy could not be determined. Dr. Lessell also challenged the conclusion of the plaintiff's toxicologist that Parnon had caused the plaintiff's condition. Other evidence showed that no other instance of blinding by Parnon had surfaced up to the time of trial.

It thus became apparent that the cause of the plaintiff's optic atrophy was difficult to determine and that the diagnosis of toxic etiology did not have the presumption of reliability found in routine observations by hospital personnel or in conclusions on which there is a consensus among skilled physicians. In these circumstances, we hold that the judge had discretion to limit the purpose for which the hospital diagnoses could be considered.

The Massachusetts cases which involve routine reporting of facts or which concern diagnoses routinely made in a hospital are not in point.[9] In those decisions the criteria of reliability set forth in *Bouchie* were met. Moreover, where common conditions are described (e.g., drunkenness, gunshot wounds, falls), cross-examination is not needed for these facts or diagnoses to be understood. Where, however, the diagnoses are more judgmental, and hence controversial, cross-examination becomes more important. Cf. *Calvanese v. W.W. Babcock Co.*, 10 Mass. App. Ct. 726, 736 (1980). Thus, in *Commonwealth v. Ennis*, 2 Mass. App. Ct. 864, 865 (1974), it was held not an abuse of discretion

---

[9] For examples of reporting of facts routinely seen in hospitals, see *Bilodeau v. Fitchburg & Leominster St. Ry.*, 236 Mass. 526, 540 (1920); *Clark v. Beacon Oil Co.*, 271 Mass. 27, 28, 30 (1930); *Cowan v. McDonnell*, 330 Mass. 148, 149 (1953) (all involving odor of alcohol); *Commonwealth v. Franks*, 359 Mass. 577, 578, 580 (1971) (routine reporting of a commonly performed vaginal smear test); *Commonwealth v. Concepcion*, 362 Mass. 653, 654-655 (1972) (diagnosis of rape); *Commonwealth v. Copeland*, 375 Mass. 438, 440 (1978) (gunshot wounds with pus); see also *Caccamo's Case*, 316 Mass. 358, 362 (1944) (diagnosis of cerebral hemorrhage following head injury).

for the judge to exclude portions of hospital records containing psychiatric conclusions concerning the victim's fear of being molested by men. Those opinions required expert testimony to be properly understood by the jury.

The distinction between diagnoses which are routine and those which involve difficulties of interpretation and hence may not have the indicia of reliability to make them admissible without cross-examination is well recognized. In a factually similar case, *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 704-705 (8th Cir. 1967), the court excluded a segment of a hospital record which described the condition of the injured parties as due to the inhalation of insect poison. "This conclusion of causation is not one that all persons skilled in the art would likely reach. [Citation omitted.] It is a conclusion not based upon directly observable facts or well known tests. [Citation omitted.] Of necessity is is . . . based upon an evaluation judgment[10] . . . placed upon a number of variable factors . . .. We do not believe the plaintiffs should be allowed to present to the jury this otherwise inadmissible conclusion as to the cause of the plaintiffs' condition simply because it fortuitously appears in a hospital record, and thereby deny to defendants the protection afforded by an oath and the opportunity to cross-examine the witness." *Id.* at 705. To similar effect is *Cornfeldt v. Tongen*, 262 N.W.2d 684, 702 (Minn. 1977), *S.C.*, 295 N.W.2d 638 (Minn. 1980), where the court refused to admit a diagnosis of halothane hepatitis contained in a hospital record on the ground that it was an unusual opinion of a nontestifying expert and controversy existed in the medical profession as to whether halothane could cause or intensify hepatitis. But see *Blosck's Case*, 277 Mass. 451, 452-453 (1931) (hospital record contained the diagnosis of "toluol poisoning," but it does not appear that there was any objec-

---

[10] In *Skogen* the court stressed that the diagnosis in the hospital record was that of a single physician. Here, there are recorded notes of several unnamed persons, of Dr. Gaudio, and of another named physician.

tion to its admissibility). Compare *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 93 (1967) (held not an abuse of discretion to admit the words "illuminating gas" appearing in hospital records, but the issue in that case was not which chemical was involved, but rather what caused the gas to escape).

Other cases indicating the admissibility of routine diagnoses and the inadmissibility of unusual or controversial ones are: *New York Life Ins. Co.* v. *Taylor*, 147 F.2d 297, 303-306 (D.C. Cir. 1945) (diagnosis of psychoneurotic state involves conjecture and opinion and must be subjected to safeguard of cross-examination); *Thomas* v. *Hogan*, 308 F.2d 355, 359-361 (4th Cir. 1962) ("diagnosis that a patient had pneumonia would be admissible, but a diagnosis of a rare disease might not, since it would not be . . . routinely made by the hospital personnel"); *Rivers* v. *Union Carbide Corp.*, 426 F.2d 633, 637-638 (3d Cir. 1970) (intoxication is "certainly the type of observation that the trained eye of a doctor could make with reasonable accuracy"); *Loper* v. *Andrews*, 404 S.W.2d 300, 305 (Tex. 1966) (diagnosis admissible only where it records a condition "resting in reasonable medical certainty"); *Noland* v. *Mutual of Omaha Ins. Co.*, 57 Wis.2d 633, 641-642 (1973); *Young* v. *Liddington*, 50 Wash. 2d 78, 84, 85 (1957). Contra *Marlow* v. *Cerino*, 19 Md.App. 619, 634-637 (1974) (psychiatric opinions); *Falcone* v. *New Jersey Bell Tel. Co.*, 98 N.J. Super. 138, 148-150 (1967) (but see *State* v. *Martorelli*, 136 N.J. Super. 449, 454-455 [1975]). See Fed.R.Evid. 803(6) and Proposed Mass.R.Evid. 803(6) (July, 1980) (diagnoses admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness"). See also Holz, A Survey of Rules Governing Medical Proof in Wisconsin — 1970, 1970 Wis. L. Rev. 989, 1023-1025; Note, Trial Court Discretion to Exclude Opinions and Diagnoses Otherwise Admissible under the Business Records Hearsay Exception, 32 Okla. L. Rev. 500 (1979). 1 Lane, Medical Litigation Guide § 3.56 (1981). See generally 6 Wig-

more, Evidence § 1707, and accompanying n.1 (Chadbourn rev. 1976).[11]

Our discussion so far has made no reference to the proviso in G. L. c. 233, § 79, that nothing contained in the record "shall be admissible as evidence which has reference to the question of liability." Although the statute has had a "liberal interpretation" in the admission of records relating to medical history and treatment even where the evidence is relevant to the issue of liability, as is indicated in the cases set forth in the margin,[12] the fact that the diagnosis here involved was a "conclusion on the highly controversial ultimate issue," *Skogen* v. *Dow Chemical Co.*, 375 F.2d at 705, was a factor which the judge, in his discretion, could properly consider in deciding that the diagnosis of toxic etiology should be the subject of a limiting instruction. See *Leonard* v. *Boston Elev. Ry.*, 234 Mass. 480, 483 (1920). Cf. *Bouchie* v. *Murray*, 376 Mass. at 531. See also Greaney, Evidence — Hospital Records Exception to the Hearsay Rule — Medical History and Treatment — Second Level Hearsay, 64 Mass. L. Rev. 33, 34 & n.6 (1979).

Accordingly, we hold that the judge did not abuse his discretion in limiting the expert testimony to be considered by the jury to the witnesses who testified at trial.

*Judgments affirmed.*

---

[11] McCormick, Evidence § 313(a), at 732 (2d ed. 1972) states that routine diagnoses are admissible, but those which "on their face are speculative are reasonably excluded . . . . In regard to those cases in between, primarily those containing opinions based on subjective symptoms or involving difficulty of interpretation, such as psychiatric diagnoses, most courts will nevertheless permit the introduction of the record." The only two cases cited by McCormick to illustrate his conclusion as to the in between cases are *Rivers* v. *Union Carbide Corp.*, 426 F.2d at 637-638, and *Thomas* v. *Hogan*, 308 F.2d at 360-361, both of which we have cited *supra* at 454, as recognizing the distinction between routine and unusual diagnoses.

[12] See, e.g., *Commonwealth* v. *Franks*, 359 Mass. at 579-580; *Commonwealth* v. *Concepcion*, 362 Mass. at 655-656. See also *Bilodeau* v. *Fitchburg & Leominster St. Ry.*, 236 Mass. at 540; *Clark* v. *Beacon Oil Co.*, 271 Mass. at 30-31; *Cowan* v. *McDonnell*, 330 Mass. at 149.