CUSTODY OF TWO MINORS.

Norfolk.  December 7, 1984. — March 29, 1985.

Present: ARMSTRONG, DREBEN, & WARNER, JJ.

*Minor*, Custody. *Parent and Child*, Care and protection of minor. *Evidence*,
    Child custody proceeding, Hospital record.

The evidentiary safeguards applicable to the adjudicative aspect of proceed-
    ings for the care and protection of minor children apply with equal force
    to evidence received at the dispositional phase, and it was error for a
    judge, during the dispositional phase of such a proceeding, to admit in
    evidence over the mother's objection certain medical reports bearing on
    her fitness to provide care and protection to her two minor children.
    [554-558]
In a proceeding on a petition for the care and protection of two minor chil-
    dren, brought by the Department of Social Services, the judge did not
    err in considering a report prepared by a court-appointed investigator
    pursuant to G. L. c. 119, § 24, which had been made available to the
    parties, even though none of them had offered the report in evidence.
    [558-559]
An incorrect form of certification of hospital records under G. L. c. 233,
    § 79, by the person having custody of the records did not render them
    inadmissible in evidence in a proceeding for the care and protection of
    minor children. [560-561]


PETITION filed in the Quincy Division of the District Court
Department on September 9, 1981.

The case was heard by *Lewis L. Whitman*, J.

*Wayne H. Thayer* for the mother.

*Alexander F. Fleming* for Department of Social Services.

*John E. DeVito* for the minors.

DREBEN, J. This appeal by a mother from a judgment deter-
mining that two of her children[1] are in need of care and protec-
tion and committing them to the custody of the Department of

---

[1] Two other children were removed from the mother in prior proceedings.

Social Services (Department) presents the following evidentiary questions: (1) Did the trial judge err in accepting in evidence, after the adjudicatory hearings were over, the report of an investigator appointed pursuant to G. L. c. 119, § 24, without informing the parties that he would do so? (2) Were hospital records of the children properly authenticated as required by G. L. c. 233, § 79? (3) Was it appropriate for the judge to consider a letter and accompanying medical reports containing hearsay information during the dispositional, as contrasted with the adjudicatory, phase of the proceedings?

The most troublesome question is the third. Because of the statutory definition of evidence contained in G. L. c. 119, § 21, and because of the significance of the rulings made at the dispositional portion of a care and protection proceeding, we hold that medical reports bearing on the fitness of a parent which would not be admissible during the adjudicatory stage of a care and protection proceeding may not be admitted during the dispositional stage. Since such reports were admitted, we vacate the judgment and remand for further proceedings consistent with this opinion.

We summarize the facts, using as our source the findings and report of the trial judge,[2] supplemented by testimony. See *Custody of a Minor (No. 2)*, 392 Mass. 719, 720 (1984). Additional facts will be discussed as they bear on the evidentiary rulings. The Department sought custody under G. L. c. 119, § 24, of the elder child on September 9, 1981, and of the younger one on July 13, 1982. Temporary custody of both children was transferred to the Department on September 8, 1982. Arrangements were made for the mother to visit the children twice a week.

The adjudicatory phase of the hearings took place between November 15, 1982, and March 8, 1983. On May 13, 1983, the

[2] Rule 3 of the Interim Supplemental Rules of Appellate Procedure in Care and Protection Cases (effective January 23, 1982) provides that if an appeal is taken under G. L. c. 119, § 27, as appearing in St. 1981, c. 715, the record on appeal shall include a report as settled and approved by the trial judge. Although the judge issued orders on May 13, 1983, and June 8, 1983, the report was not entered until March 27, 1984.

judge issued his "Findings and Order" and concluded that both children were in need of care and protection. Three days later the Department terminated visitation. A dispositional hearing was held on June 3, 1983. On June 8, 1983, the judge entered a second order and findings in which he gave permanent custody to the Department, terminated visitation, and suggested to the Department that proceedings under G. L. c. 210, § 3, be brought promptly to terminate the need for parental consent to adoption.

1. *Medical report introduced during dispositional hearing.* At the dispositional hearing on June 3, 1983, a letter with accompanying reports concerning a visit by the mother and the children to Children's Hospital Medical Center was admitted over the mother's objection. The visit took place on February 24, 1983, and was occasioned by the testimony of the children's pediatrician during the adjudicatory hearings. His perception of the children differed from an earlier report prepared by a team at Children's Hospital after an October, 1982, visit to the hospital by the mother and the children. Because of the pediatrician's testimony, the second visit to the Children's Hospital team was arranged. While the mother and a social worker testified about the visit during the adjudicatory hearings, the report of the visit, dated March 31, 1983, was not given to the judge until the dispositional hearing on June 3, 1983.

The significance of the March medical report is reflected in the difference between the judge's findings on May 13, 1983, and those on June 8, 1983. In his May 13, 1983, order, the judge found that although "there is substantial evidence that the mother is unable to provide . . . care and protection, . . . there is also a substantial basis for concluding that with appropriate assistance, she might be able to provide the necessary care and protection to either or both of the children." His findings as to the elder child included: The mother's "deficiencies may not arise to the level which requires the termination of parental involvement with [the child]. It would cause [the child] great harm were his contact and relationship with his mother wholly terminated." The judge also found that the

mother's mistrust of the social services system was not "without a reasonable basis in her own experience."

Three weeks after these findings, the hearing as to disposition was held. The Department offered as evidence the March 31, 1983, medical report which consisted of a letter to the Department from Dr. Eli Newberger of the Children's Hospital Medical Center incorporating reports from him and others concerning the February 24, 1983, visit. The mother objected, claiming that the letter and reports were hearsay and had not been provided to counsel prior to the hearing in accordance with counsel's request under the Department's rules. Her objections were overruled. Dr. Newberger's letter and the accompanying reports were devastating, and the judge, on the Department's recommendation, committed the children to the Department. He denied the mother's motion for continued visitation and ordered that the Department bring before the court any plans for future visitation. In his order the judge also suggested that the Department first make an evaluation and then proceed promptly under G. L. c. 210, § 3, to terminate the need for parental consent to adoption.

The February 24, 1983, visit was a disaster from the mother's standpoint. A hint of the difficulty was revealed in her own account of the visit during the adjudicatory portion of the hearings where she suggested that sensitive episodes from her own unhappy childhood were brought to the fore by the manner of questioning and note-taking which occurred during the visit. She acted badly, and all members of the Children's Hospital team who saw her concluded that the children were in danger, that visits should be highly controlled, and that the children should not be returned to her care. The mother did not receive a copy of the report of the February visit prior to the hearing, and she had no opportunity to cross-examine Dr. Newberger and the other members of the Children's Hospital team or to seek to put in context her unacceptable behavior at the visit.

The Department urges that hearsay should be admissible at the dispositional stage of care and protection proceedings and relies on Standard 6.01 of "Standards of Judicial Practice,

Care and Protection Proceedings"[3] which, in commentary, supports the Department's position. We consider such a procedure impermissible. General Laws c. 119, § 21, which governs the admission of evidence in care and protection proceedings, states that "'Evidence' shall be admissible according to the rules of the common law and the General Laws."[4] Thus, the traditional right to confront and cross-examine adverse witnesses is preserved in the statutory scheme.

Nor is there an inherent dichotomy between the adjudicatory and the dispositional portion of a care and protection proceeding although in some cases it may be convenient to separate the two. The statute does not require bifurcation. All phases of care and protection proceedings have the same objective, the "strengthening and encouragement of family life for the protection and care of children." G. L. c. 119, § 1, as appearing in St. 1954, c. 646, § 1.

"Permanent severance of the natural parent-child relationship is not a goal in this kind of custody proceeding. The policy that it is generally better to place children within their natural family than without is . . . applicable in the care and protection context . . . particularly when the department is awarded permanent, as opposed to temporary, custody of the child." *Care & Protection of Three Minors*, 392 Mass. 704, 715-716 n.17 (1984). Thus, the first option mentioned in G. L. c. 119, § 26,

---

[3] These standards appear in Administrative Regulation 2-80, promulgated March 24, 1980, by the Administrative Office of the District Court Department. In commentary, the author of the standards states: "Once an adjudication has been made, hearsay may be admitted during the dispositional stage."

[4] The entire provision in c. 119, § 21 (as appearing in St. 1972, c. 785, § 7), concerning "evidence" reads as follows: "'Evidence', shall be admissible according to the rules of the common law and the General Laws and may include reports to the court by any person who has made an investigation of the facts relating to the welfare of the child and is qualified as an expert according to the rules of the common law or by statute or is an agent of the department or of an approved charitable corporation or agency substantially engaged in the foster care or protection of children. Such person may file with the court in a proceeding under said sections a report in full of all the facts obtained as a result of such investigation. The person reporting may be called as a witness by any party for examination as to the statements made in the report. Such examination shall be conducted as though it were on cross-examination."

is to permit the child to remain with his or her parents even in cases where the department has custody. It need not be belabored that, where the children remain with the parent, the chances of ultimate separation may be diminished.

It is quite evident that at the time of his May 13, 1983, findings and prior to the receipt of Dr. Newberger's report three weeks later, the judge thought there was a real possibility of the children, or at least the elder child, remaining with the mother. We think that where, as here, the hearing on disposition "potentially involv[es] the separation of parents from their children," the considerations expressed in *Duro* v. *Duro*, 392 Mass. 574, 580 (1984), require application of the traditional evidentiary safeguards. This is true whether the reports are by court-appointed investigators or by others. In *Duro*, involving a dispute between a mother and father as to custody, the court held that "fundamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child-rearing capabilities." *Id.* at 580; see also n.9 at 580-581, linking permission to rely on hearsay reports of court-appointed investigators "to the opportunity of affected parties to refute incorrect information contained in such reports."[5]

Also apposite is the reasoning of *Gilmore* v. *Gilmore*, 369 Mass. 598, 604-605 (1976):

> "In a custody proceeding, a judge makes a determination as to what is in the best interests of the child on the basis of facts presented at trial as well as facts gathered by the court-appointed investigators. The need for accurate, objective information is of foremost importance in this process. In order to determine adequately the reliability and accuracy of a report, we believe that, as a matter of sound judicial policy, the parties should have the opportunity to rebut the report, including the right to

---

[5] We need not consider whether the report of Dr. Newberger is a report under § 21, see note 4, *supra*. The parties did not treat it as an investigative report, and no copy of the report was made available to the mother's counsel prior to the hearing on disposition.

cross-examine the investigator. To promote a fair fact-finding process, cross-examination of the investigator should be permitted, subject to the rules of evidence, so that the credibility, bias, or prejudice of the investigator may be tested and the weight to be given to his report may be determined. This rule should prevail whether or not the parties consent to the investigation."

In addition to the need for promoting a fair fact-finding process in custody situations, the Supreme Judicial Court has laid stress on the importance of dispositional decisions. Stringent requirements assure that judges "exercise the utmost care" in making such determinations, see *Custody of a Minor (No. 1)* 377 Mass. 876, 885-886 (1979), even when they do not involve custody. The court has held, for example, that termination of visiting rights is a "ruling of such significance to the parties" that the "standards which apply to permanent custody decisions" also apply to these rulings. *Custody of a Minor (No. 2)*, 392 Mass. at 726. Thus, a judge is required to make specific findings of harm to the child before visitation rights can be terminated. *Ibid.* See *Custody of a Minor (No. 1)*, 377 Mass. at 885-886.

Because of the importance of the rulings as to disposition, the court has cautioned judges not to leave to the Department alone the decisions regarding placement and visitation and has urged them to take an active role and give guidance to the Department in these matters. *Care & Protection of Three Minors*, 392 Mass. at 714-718. Unless there is a meaningful opportunity for parents to question the reliability of reports made to the Department or to inquire as to the Department's plan, the judge may not have accurate and objective information. Severance and ultimate termination of parental ties may well be the result. We hold, therefore, that the evidentiary safeguards applicable to the adjudicatory aspect of care and protection proceedings apply with equal force to evidence relating to parental fitness received at the dispositional phase.

2. *Admission of report of investigator.* The statutory procedure to commit a child to the custody of the Department provides in

G. L. c. 119, § 24, as amended through St. 1973, c. 1076, § 2, that "the court shall appoint a person qualified under section [twenty-one] [see note 4, *supra*] to make a report to the court under oath of an investigation into conditions affecting the child. Said report shall then be attached to the petition and *be a part of the record*" (emphasis supplied). Although the report of the court-appointed investigator was made available to the parties, none of them had offered the report in evidence. In his May 13, 1983, "Findings of Fact and Order," the judge stated that the report "was received in evidence."

There is no question that § 24 anticipates use of the report by the trial judge. Nor is there any question that counsel for the mother, who was given a copy of the report, had ample opportunity to rebut its contents. See *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). We, therefore, find no error in the admission of the report. If the mother had any question as to whether the judge would consider the report, she should have made inquiries.

Although there was no error in the admission, we note that G. L. c. 119, § 21, see note 4, *supra*, allows any party to call the investigator as a witness and to cross-examine him, and that, in accordance with *Duro* v. *Duro*, 392 Mass. at 580 n.9, to which we have already adverted, such reports are admissible only where parties have the opportunity to refute incorrect information. For this reason, we think it would be sound practice, in a case where a report is not introduced in evidence by the parties, or used or otherwise relied on by them during trial, for the judge to give notice of his intention, if any, to consider the report as evidence. In this case the investigator's report was a year and a half old at the time of the hearings, and there was discussion about obtaining an additional report of another investigator. A precautionary explanation by the judge would have averted any assumption by the mother's attorney that the report would not be considered and would have prodded counsel to make a conscious decision as to whether to call the investigator to the stand. See *Gilmore* v. *Gilmore*, 369 Mass. at 604-606; *Hayden* v. *Hayden*, 15 Mass. App. Ct. 915, 916 (1983).

3. *Hospital records*. The only claim made on appeal as to the records of the Children's Hospital team which were introduced during the adjudicatory hearings is that they were not authenticated in accordance with G. L. c. 233, § 79.[6] That statute provides that hospital records which are required to be kept under G. L. c. 111, § 70, as appearing in St. 1959, c. 200, and which are required to be produced in court by any party, "shall be certified by the affidavit of the person in custody thereof to be a true and complete record" and shall be delivered to the clerk of court.

The records of each child in the present case bore the following notation: "This is to certify that the attached is a complete and true copy of the medical record of this hospital concerning the treatment of [the child]." It was signed by "Ellen C. Fitzgerald, Director, Medical Record Dept." Next to her signature appeared the following form signed by a notary. "Commonwealth of Massachusetts, Suffolk ss. Date November 15, 1982. Then personally appeared the above named Ellen C. Fitzgerald and acknowledged the foregoing instrument to be his [*sic*] free act and deed, before me, Roy G. Bauer, Notary Public. My commission expires September 2, 1988."

The mother's claim is that the certification was not by affidavit, that is, it was not made under oath or under the penalties of perjury. The judge, while recognizing that the certification could have been drawn "more artfully," admitted the records, saying that the notarization was "an attempt to indicate that the person who signed it did it with solemnity and giving concern to what she said." We find no error.

The director, by signing her name to the statement that the copy was a complete and true copy, was conscious of the fact that she was certifying to the correctness of the records. We do not think the notary's choice of form should render the

---

[6] The records concerned the October, 1982, visit. At trial, the mother's counsel claimed the records contained inadmissible hearsay, but this contention has not been pursued on appeal. The records were similar to those of the February 24, 1983, visit, discussed in part 1 hereof. See generally *Bouchie* v. *Murray*, 376 Mass. 524, 531 (1978); *Commonwealth* v. *Dunne,* 394 Mass. 10, 17 (1985); *Commonwealth* v. *Ennis*, 2 Mass. App. Ct. 864, 865 (1974); *Diaz* v. *Eli Lilly & Co.*, 14 Mass. App. Ct. 448, 454 (1982).

records inadmissible. See *Dalbey Bros. Lumber* v. *Crispin*, 234 Iowa 151, 155 (1943). As pointed out in *J.P. Smith Co.* v. *Wexler Construction Co.*, 353 Mass. 551, 553 (1968), "In the circumstances an acknowledgment that the statement was [her] free act and deed . . . implies an assertion . . . that [she] is not making a careless or false presentation. . . . The contemporaneous signing by the notary assures that the statement was solemnized." We think the certification was sufficient to satisfy G. L. c. 233, § 79.

4. *Conclusion.* Because of our holding that the hearsay records of Dr. Newberger and his group which were introduced at the dispositional phase of the hearings should not have been admitted, the judgment is vacated, and the case is remanded to the District Court for further proceedings. We recognize that the judge did not have the benefit of the more recent cases of the Supreme Judicial Court and that he relied justifiably on the standards promulgated by the District Court Department. His careful opinions deserve commendation despite our vacating the judgment.

"As a substantial period of time has passed since the last hearing in this matter, and since the parties' circumstances may have changed as a result, the parties must be given an opportunity to present new evidence." *Custody of a Minor (No. 2)*, 392 Mass. at 727. The judge should also consider, on a petition from the mother, the reinstatement of visitation rights as to one or both children "unless it is demonstrated that such visitation will injure the welfare" of such children. *Id.*

*So ordered.*