Custody of Tracy[1] & another.

No. 91-P-267.

Franklin. June 14, 1991. - October 21, 1991.

Present: Kass, Fine, & Greenberg, JJ.

*Minor*, Custody. *Parent and Child*, Care and protection of minor. *Evidence*, Child custody proceeding, Hearsay, Report of licensed social worker. *Practice, Civil*, Care and protection proceeding.

In a proceeding under G. L. c. 119, §§ 24-27, for care and protection of two minor children, the judge correctly admitted in evidence, pursuant to G. L. c. 119, § 24, certain portions of the court-appointed investigator's report that contained multiple level hearsay, and he properly and explicitly evaluated the weight to be given that evidence. [483-487]

Petition filed in the Greenfield Division of the District Court Department on October 24, 1989.

The case was heard by *Bernard Lenhoff*, J.

*Robert B. Carlsen* for the father.

*Alexander G. Gray, Jr.*, Special Assistant Attorney General, for Department of Social Services.

Greenberg, J. The father of two children appeals from a decision on a complaint for care and protection (G. L. c. 119, §§ 24 through 27). A District Court judge ruled that the biological parents are currently unable to provide appropriate care for the children. The children were temporarily committed to the custody of the Department of Social Services (DSS).[2] The appeal is presented on the findings, rulings, and memorandum of the District Court judge and the draft report of the father which was settled and approved by

---

[1] We use a pseudonym.

[2] The judge's order was conditioned on the parents' compliance with a service plan to be prepared by the DSS and implemented to reunify the family. See 110 Code Mass. Regs. §§ 6.00 et seq. (1988). Only the father has appealed. The parents have since obtained a divorce.

the judge. See G. L. c. 119, § 27. The sole issue before us is the admission in evidence of certain portions of the court-appointed investigator's report.[3] The District Court judge drew from this report in making comprehensive findings of fact, relevant portions of which we summarize.

I. *The background.* Both parents had very troubled lives in their formative years. As a child, the mother was removed from her parents' custody due to abuse and lived with her aunt.[4] The father, as well, was placed in foster care when he was six months old and at thirteen was placed in a group home. While there, he had temper tantrums and emotional problems which manifested themselves in lying and stealing. He left high school before graduating, joined the army, and was honorably discharged.

The parents were married on June 26, 1988, and their daughter was born on September 15, 1988. On November 1, 1988, while the father was on National Guard active duty, a report of suspected neglect pursuant to G. L. c. 119, § 51A, was filed by a nurse to whom the mother had been referred. A subsequent investigation revealed that the mother was failing to attend to the child's physical needs and had not visited any pediatrician, though the child was six weeks old. The child had an eye problem and a buttock rash, but the mother remained unconcerned. The DSS gave the family medical and financial assistance and created a service plan to correct the lack of parental skills exhibited by both parents. The father refused to sign the plan and did not attend the recommended counseling sessions. While the family was staying in

---

[3]General Laws c. 119, § 21, as appearing in St. 1972, c. 785, § 7, indicates that the purpose of the report is to inform the court of the facts found by the investigator ("Such person may file with the court . . . a report in full of all the facts obtained as a result of [the] investigation"). In the event, as frequently occurs, the report is not submitted in evidence by any of the parties, the judge may consider it as part of the record. See *Custody of a Minor*, 19 Mass. App. Ct. 552, 559 (1985). However, sound practice dictates that the judge inform the parties of this circumstance prior to closing the hearing in order to allow counsel to make an informed decision whether to call the investigator. *Ibid.*

[4]The mother's mother tried to drown her several times when she was young, and also attempted to commit suicide several times.

a Greenfield shelter, the director voiced concerns to the father about the way he behaved with his daughter.

In 1989, the family moved to a house occupied by a divorced female friend of the father. On inspection, a DSS social worker found the place run-down and dirty. Following the son's birth on September 1, 1989, the mother suffered from postpartum depression. The children were left unsupervised. The mother questioned her own ability to care for the children and said she could not cope with them. In late October, a DSS social worker met the father on the street. He told the worker that his wife had attempted suicide and that he had left the children alone with her while she was distraught, asking a neighbor to keep an eye on them. As a result, on October 24, 1989, a care and protection petition was filed on behalf of both children and they were placed in temporary foster care.

The father visited his children each week. During those visits the foster parent noted that the father dealt with them in an inappropriate manner. While holding his son, he failed to support the baby's head and he allowed him to fall. He upset the children when he played with them. Once when the boy threw a toy, the father threw it back at him, and on another occasion, when the girl was crying, he left, complaining that he could not deal with it. A clinical psychologist saw the father and found him to have a personality problem. The judge, extrapolating from the investigator's report, concluded that the father believed that child care is a woman's responsibility and that his own parental ability was wanting.

Pending the adjudicatory hearing, Frederick F. Becklo, Jr., a licensed social worker, was appointed pursuant to G. L. c. 119, § 24 (1988 ed.), to make an "investigation into conditions affecting the child[ren]." His seventeen-page report was filed with the District Court on December 12, 1989. The report contained a summary of interviews with the parents, named relatives, health care providers, and social workers.

II. *The disputed report.* An evidentiary hearing on the petition commenced on February 26, 1990. During the cross-

examination of the investigator, DSS brought to the attention of the judge that the father, following our decision in *Custody of Michel*, 28 Mass. App. Ct. 260, 265-266 (1990), had filed a motion in limine to strike certain portions of the investigator's report. After considering the motion, the judge excluded hearsay information gleaned from sources who were unnamed or unknown to the investigator. What the father now complains of is that the investigator's report, after deletions by the judge, contained "second level" hearsay as well as irrelevant and immaterial evaluations and opinions. It does not appear that the judge gave undue weight to the opinions expressed in the report. Nor did he merely parrot the findings and conclusions of the investigator. See *Petition of the Dept. of Pub. Welfare to Dispense With Consent to Adoption*, 383 Mass. 573, 593 (1981). Nevertheless, the father invites us to revise *Michel*, which he argues impermissibly allowed the judge to stray from traditional evidentiary standards.

In *Michel*, we stated that previous cases "draw no distinction between levels of hearsay." *Id.* at 266. "It stands to reason that an investigator will talk to neighbors, teachers, social workers, mental health workers, relatives, and friends, and some of those persons will describe what they heard from third persons. The remedy is not to attempt to purge secondary hearsay from § 24 reports but to afford an opportunity to refute the investigator and the investigator's sources through cross-examination and other means." *Id.* at 266.

Thus, we have already disposed of arguments that multiple level hearsay is not admissible as part of the investigator's report. Section 24 of G. L. c. 119 mandates that "the court *shall* appoint" (emphasis added) an investigator whose report shall be part of the record. The report may be admitted as a statutory exception to the hearsay rule, see *Custody of Jennifer*, 25 Mass. App. Ct. 241, 245 (1988), allowed because of the importance of providing needed information to the court. It recognizes the difficulty and time constraints inherent in collecting adequate confidential information to be

presented at the adjudicatory hearing.[5] The purpose of G. L. c. 119, as stated in § 1 (1988 ed.), is "[t]o insure that the children of the commonwealth are protected against the harmful effects resulting from the absence, inability, inadequacy or destructive behavior of parents. . . ."

The legislative intent with regard to hearsay investigators' reports may be gleaned from other instances in which care and protection cases are exempt from traditional evidentiary requirements. For example, G. L. c. 112, §§ 135 through 135B, as inserted by St. 1989, c. 535, § 1, abolished the customary social worker-client confidentiality privilege in care and protection cases if a parent divulges to the worker information bearing on his or her ability to parent. A similar exception is made for psychotherapists in G. L. c. 233, § 20B, as amended through St. 1989, c. 373.

In 1990, the Legislature enacted St. 1990, c. 339, adding §§ 81, 82, and 83 to G. L. c. 233 regarding the admissibility of a child's hearsay statements. Section 83, which governs child hearsay statements in care and protection cases, allows such statements in evidence as long as certain factors are met.[6] Sections 81 and 82 impose more stringent restrictions on hearsay statements in *all* civil cases *other* than care and protection cases.

The rationale for these evidentiary exceptions is that in order to navigate through the cross-currents in determining the fitness of parents, the judge needs to steer as wide a course as possible. As we explained in *Michel*, the way to deal with multiple level hearsay may not be to strike it from the report. The need for accurate information is best served if the par-

---

[5]It is important to note that these hearings are before experienced judges who can be expected to know the problems with ordinary hearsay and multi-level hearsay evidence. The defendant has the opportunity to cross-examine the investigator and impeach his or her sources. We are justified in presuming, both as a matter of law (see, e.g., *Rice* v. *Merrill*, 215 Mass. 419 [1913]; *Germain* v. *Raad*, 297 Mass. 73 [1937]), and as a matter of our common experience, that trial judges will not be unduly influenced by flimsy, unsupported, or unreliable statements.

[6]These factors are that (1) the child is under ten years old, (2) the statements concern sexual contact, (3) the third person who heard the statement testifies in court, and (4) it is evidence of a material fact.

ties have the opportunity to rebut the report, including the right to cross-examine the investigator. Compare *Gilmore* v. *Gilmore*, 369 Mass. 598, 604-605 (1976). In this way, the judge can consider all of the available evidence and give each piece the appropriate amount of weight. *Adoption of a Minor (No.2)*, 367 Mass. 684 (1975). For cases which deal with investigative reports and the right to cross-examine the author of those reports, see *Hayden* v. *Hayden*, 15 Mass. App. Ct. 915 (1983); *Custody of Two Minors*, 19 Mass. App. Ct. 552, 554-559 (1985). As the judge remarked here, after refusing to strike particular parts of the report, "[w]hat you're doing now, [is] consuming a great deal of time, and it isn't causing this case to be brought closer [to a resolution]. . . . I will give that tertiary or secondary hearsay the credibility it rightfully deserves."

This principle is stated in many other cases. The report was "entitled to such weight as the judge saw fit to give [it]". *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). Cross-examination of the investigator provides an effective means to impeach the credibility of statements contained in the report. The judge weighs the report after assessing the investigator's credibility. See *Gilmore* v. *Gilmore, supra.*

We know of no reported cases disallowing secondary hearsay in the investigator's report. "[T]he inclusion of hearsay is now beyond question," *Custody of Jennifer*, 25 Mass. App. Ct. at 245, and cases there cited. In another case, with facts similar to those presented here, the Supreme Judicial Court rejected a contention that "certain parts of the court-appointed investigator's reports should have been excluded as incompetent and/or hearsay." The court concluded that the entire report was admissible and that there was no error. *Custody of a Minor (No. 2)*, 378 Mass. 712, 723 (1979).

On the other hand, fairness and due process concerns require "that a parent be given the opportunity effectively to rebut adverse allegations," by having the opportunity to refute incorrect information. *Custody of Two Minors*, 19 Mass. App. Ct. 553, 557 (1985), quoting from *Duro* v. *Duro*, 392 Mass. 574, 580 (1984). The judge in this case scrupu-

lously followed the recommended practice for District Court judges contained in the District Court Standards of Judicial Practice for Care and Protection Cases § 4:01 (rev. June 1988) which also suggests that the investigator's report be limited to factual information collected from identified sources in order to permit fair cross-examination of the investigator as to all contributions to his report. An additional safeguard to insure fairness is the requirement that both parties be given a copy of the report before the hearing. *Id.* § 4.02.

III. *Conclusion.* Thus, to achieve the purpose of G. L. c. 119, the protection of children in the Commonwealth, the Legislature has etched a statutory exception to the hearsay rule that is not carved in stone; it is a rule of reason. Carefully applied, as by the judge here, it will preserve the right of a fair trial to all parties concerned.

*Judgment affirmed.*