NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-473                                            Appeals Court

ADOPTION OF LUC.[1]


No. 18-P-473.

Suffolk.     September 5, 2018. - December 13, 2018.

Present:  Hanlon, Sullivan, & Desmond, JJ.


Parent and Child, Adoption, Dispensing with parent's consent to
     adoption.  Minor, Adoption.  Adoption, Dispensing with
     parent's consent.  Evidence, Child custody proceeding,
     Public documents, Declaration of deceased person, Report of
     licensed social worker.


     Petition filed in the Suffolk County Division of the
Juvenile Court Department on September 23, 2013.

     The case was heard by Peter M. Coyne, J.


     Sarah M. Unger for the mother.
     Brian Pariser for Department of Children and Families.
     Justin D. Cohen for the child.


     SULLIVAN, J.  The mother appeals from a decree issued by a

judge of the Juvenile Court terminating parental rights to her

son, Luc.  See G. L. c. 210, § 3.  She contends that (1) the

_____

     [1] A pseudonym.

judge based his findings on dictation notes and reports of a deceased social worker that contained inadmissible hearsay; (2) the admissible evidence did not support a finding of unfitness; and (3) the lengthy delay between the witness testimony and the judge's findings of fact rendered the findings unreliable. We conclude that the dictation notes and reports were admissible, the evidence was sufficient, and the delay was not prejudicial. We therefore affirm.

Hearsay. The mother's threshold claim is that the judge erroneously admitted dictation notes taken and reports prepared by Department of Children and Families (DCF) social worker Stephen McMorrow. After McMorrow testified on direct examination, the trial was continued for several months. In the interim, before the mother had an opportunity to cross-examine him, McMorrow died. The judge struck McMorrow's testimony, but admitted his dictation notes, reports, and assessments, subject to rebuttal, and with certain limitations.[2] The judge

---

[2] The judge stated:

"I'll allow the admission of the dictation, subject to the counsel's -- to the parties' opportunity to rebut any of the -- any of the factual assertions that are in there, but it would only be limited to statements of fact and as to, as similarly with all the other types of reports and assessments that the -- there's a limitation on the materials that'll be admitted, and it will -- a judgment and opinion will not be admissible under the regular rules of hearsay."

meticulously interlineated ninety pages of the record with rulings and redactions, admitting statements of fact, and excluding opinion and impressions.  Melissa Thibodeau, who was McMorrow's supervisor, testified in his stead, and was permitted (over objection) to summarize certain aspects of his reports.

"In a care and protection proceeding, evidence is 'admissible according to the rules of the common law and the General Laws.'"  Care & Protection of Zita, 455 Mass. 272, 279 (2009), quoting G. L. c. 119, § 21A.[3]  "The general admissibility of case work documents and court investigator reports is no longer seriously in question."  Adoption of Iris, 43 Mass. App. Ct. 95, 100 n.8 (1997).  See Adoption of Paula, 420 Mass. 716, 725 (1995); Adoption of George, 27 Mass. App. Ct. 265, 274

---

[3] General Laws c. 119, § 21A, provides in pertinent part:

"Evidence in proceedings under sections 21 to 51H, inclusive, shall be admissible according to the rules of the common law and the General Laws and may include reports to the court by any person who has made an investigation of the facts relating to the welfare of the child and is qualified as an expert according to the rules of the common law or by statute or is an agent of the department or of an approved charitable corporation or agency substantially engaged in the foster care or protection of children.  Such person may file with the court in a proceeding under said sections 21 to 51H, inclusive, a full report of all facts obtained as a result of such investigation.  The person reporting may be called as a witness by any party for examination as to the statements made in the report.  Such examination shall be conducted as though it were on cross-examination."

(1989).[4]  The rationale underlying these cases is that service plans, case reviews, and foster care reviews are admissible pursuant to "the public documents or official records hearsay exception [that] authorizes admission of the record of a primary fact made by a public officer in the course of official duty." Adoption of George, supra at 272.  See Adoption of Vidal, 56 Mass. App. Ct. 916, 916 (2002); Mass. G. Evid. § 1115(b)(2)(C) (2018).  Cf. Mass. Guide Evid. § 803(8)(A).

The mother contends that the dictation notes are not an official record because they are not required by statute, unlike reports of social workers, court investigators, and guardians ad litem, and those reports made pursuant to G. L. c. 119, §§ 51A and 51B.  See G. L. c. 119, §§ 21, 21A, 24; G. L. c. 215, § 56A; and G. L. c. 119, §§ 51A (a), 51B (c), respectively.  The dictation notes are required by regulation, and are therefore made in the course of an official duty.  See 102 Code Mass. Regs. § 5.13(2)(b)(12) (1998).  Section 5.13(2)(b)(12) requires that case workers maintain "case notes documenting contacts and

---

[4] We note that Adoption of George, supra, was decided under what was then G. L. c. 119, § 21.  Section 21 was later amended, and the provisions upon which we now rely were moved, with modifications, from § 21 to § 21A.  See St. 1972, c. 785, § 7; St. 1996, c. 151, § 276; St. 2008, c. 176, § 83; St. 2008, c. 215, § 64B.

services set forth in 102 [Code Mass. Regs. §§] 5.05(1) and (3), 5.06, and 5.07" for each child.[5]

"[A] properly promulgated regulation has the force of law and must be given the same deference accorded to a statute." Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 496 (2010).  See Dexter v. Superintendent, Massachusetts Correctional Inst., Concord, 88 Mass. App. Ct. 325, 326 (2015).[6]  The dictation notes were taken as required by law, in the course of McMorrow's duties, and are an official record within the meaning of the statutes.  See Adoption of George, 27 Mass. App. Ct. at 272. The notes formed the basis of reports signed by McMorrow and his supervisor.  See Adoption of George, supra ("It would be

_____

[5] After trial, 102 Code Mass. Regs. § 5.13(2) was superseded by 606 Code Mass. Regs. § 5.12(2) (2018).

[6] In addition, DCF policy no. 85-011 (1995), entitled "Assessment Policy," requires that a case worker performing an assessment of a family "document[] all client and collateral contacts in dictation by noting the date, location, and method of contact as well as the content and outcome of each contact." The policy is entitled to substantial deference but does not have the force of law.  See Global NAPs, Inc., 457 Mass. at 496 (guidelines do not have force of law).  The policy is consistent with the regulation and underscores our conclusion that the dictation notes are an official record.  Contrast id.  Because the notes were required by regulation, we need not decide whether the policy alone would suffice to render the dictation notes an official record.  After the date of this trial, DCF replaced policy no. 85-011 with policy no. 2017-01, entitled "Family Assessment and Action Planning Policy," effective Feb. 6, 2017, https://www.mass.gov/files/documents/2018/03/05/Family Assessment and Action Planning Policy.pdf [https://perma.cc/7YVB-93DL].

anomalous to require keeping of these records on the one hand while requiring that they be entirely ignored on the other when the case is under judicial review").

The dictation notes and the reports were admissible subject to two conditions. "The first of two conditions that limit the receipt in evidence of [DCF] reports is that the reports must either be limited to a statement of facts, or redacted to exclude opinion, diagnosis or evaluation." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 766 (1998). We have reviewed the record and are satisfied that the judge made the necessary rulings and redactions of statements of evaluation, impression, and opinion, and that the document admitted was a record of primary fact. See Adoption of George, 27 Mass. App. Ct. at 272.[7]

"The second condition is that opposing parties must be able to cross-examine the author of the report, should they request so to do." Care & Protection of Bruce, supra. "[F]airness and due process concerns require 'that a parent be given the opportunity effectively to rebut adverse allegations,' by having the opportunity to refute incorrect information." Custody of Tracy, 31 Mass. App. Ct. 481, 486 (1991), quoting Custody of Two

---

[7] To the extent that the reports contained, and the judge relied on, matters that were arguably impression or opinion (for example, the findings regarding the mother's cluttered home or her struggle with the child's high energy level), there is other evidence in the record to support the finding.

Minors, 19 Mass. App. Ct. 553, 557 (1985), and Duro v. Duro, 392 Mass. 574, 580 (1984). McMorrow's untimely death deprived the mother of the opportunity to cross-examine him. The judge properly struck his testimony. The remaining question is whether the reports were admissible on some other basis.

We conclude that the reports were otherwise admissible (without cross-examination of McMorrow) as the declaration of a decedent. General Laws c. 233, § 65, provides that "[i]n any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant." Written reports fall within the ambit of § 65. Bellamy v. Bellamy, 342 Mass. 534, 536 (1961). The fact that reports and dictation notes are kept as required by law will generally satisfy the good faith requirement in the statute; the public duty to report is an indicia of reliability. Case work documents and court investigator reports prepared by DCF staff in the course of their work bear the indicia of reliability and are generally admissible. Brantley v. Hampden Div. of the Probate & Family Court Dep't, 457 Mass. 172, 185 (2010). The mother does not contend that McMorrow exhibited bias, or that his reports were made without a good-faith basis.

The mother nonetheless contends that she was unduly prejudiced by the admission of documents whose author she was unable to cross-examine.  Of the thirty-one findings challenged by the mother, several involve statements she made to McMorrow.  The underlying statements of the mother constitute the admissions of a party opponent.  See Adoption of Larry, 434 Mass. 456, 464 (2001).  The mother testified at trial and could rebut any statement improperly attributed to her.

Several other statements involve prior clinical histories and summaries of reports by mental health providers, substance abuse service providers, and day care providers; notations of G. L. c. 119, § 51A, reports; initial and amended DCF service plans and goal assessments; and reports of the mother's probation officer.  We have previously held that this second-level hearsay is admissible "with opinion, evaluation, and judgment material edited out," noting the burden that would be imposed in calling the full panoply of actors involved in any case at trial.  Adoption of George, 27 Mass. App. Ct. at 274.  The underlying reports were prepared by numerous professionals who also have an obligation to make truthful and accurate reports to the department "as a matter of duty and routine." Id. at 274-275.  "It would ill serve the interests of the parties or the court if each contributor to the case record were required to present testimony from her or his own mouth."  Id.

at 273. Any prejudice stemming from the factual observations of the service providers is found not in the summary prepared by the department social worker, but in the observations of the service providers themselves. This second-level hearsay may be rebutted by subpoenaing the source.

Of those observations made by McMorrow himself during home visits, the mother does not dispute some, such as her refusal to attend Alcoholics Anonymous meetings, and her decision to leave one of her children with her brother, who had been diagnosed with schizophrenia and who had been arrested for sexual assault a month before she left the child alone with him. She testified, and she had the opportunity to dispute any other fact regarding her behavior observed only by McMorrow and contained in the dictation notes and reports. Finally, the mother's new social worker testified to her knowledge of the mother's history of drug and alcohol use, and the reasons the mother gave for her positive drug screens, reasons that the judge did not credit.

The mother also relies on Anselmo v. Reback, 400 Mass. 865 (1987). She argues that the prejudice attendant to admitting the reports and dictation notes without the opportunity for cross-examination far outweighs the probative value of the evidence. In Anselmo, however, the plaintiff's decedent in a medical malpractice case made a videotaped statement in anticipation of her impending death. No notice was given to the

defendants, who thus had no opportunity to cross-examine her. The Supreme Judicial Court affirmed the decision of the trial judge to exclude the evidence, reasoning that G. L. c. 233, § 65, was not intended to involve "declarations of a deceased person that were made for the purpose of perpetuating the declarant's testimony." Id. at 869. This case, unlike Anselmo, is consistent with prior cases in which "provision for cross-examination . . . [was] not a realistic possibility." Id.

Fitness. "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). The best interests of the child are "of paramount importance." Care & Protection of Olga, 57 Mass. App. Ct. 821, 830 (2003).

The mother's primary challenge to the judge's determination of unfitness is based on her previous argument that the evidence of mental illness, resistance to treatment, choice of an inappropriate caregiver for a child, and lack of engagement with and care of Luc all derived from erroneously admitted case notes and reports.[8] Having concluded that the reports and notes were

---

[8] The mother also challenges the admissibility of the testimony of Thibodeau, McMorrow's supervisor. The parties had originally stipulated that Thibodeau could testify to lay a foundation for the reports, which she also signed. Due to delays in the trial calendar, she testified eight months after McMorrow's death. She was allowed to summarize, over objection,

properly admitted, that evidence is properly before us.  We conclude that the judge's determination of unfitness was supported by clear and convincing evidence.  See Care & Protection of Vick, 89 Mass. App. Ct. at 706.  The mother's long-term history of mental illness, sporadically treated, her reliance on drugs and alcohol to self-medicate, her positive urine screens during the pendency of the case, her noncompliance with service plans, and her inability to attend to Luc, coupled with the systematic neglect of her six older children due to the same untreated mental health and substance abuse issues, "proved parental unfitness by clear and convincing evidence."  Custody of Eleanor, 414 Mass. 795, 802 (1993).

Delay.  The mother also maintains that the thirteen-month delay between the termination decree and the issuance of the judge's findings of fact (which issued one year after the mother filed her notice of appeal) renders the findings unreliable.[9]

---

some of the evidence in the reports, including observations she made, her visits and telephone conversations with the mother, the mother's case history, the mother's positive drug screens, and the mother's failure to adhere to service plan tasks. Thibodeau did not purport to testify to conversations between the mother and McMorrow that occurred when Thibodeau was not present, but she did verify the dictation notes and reports as keeper of the record.  The testimony based on her firsthand knowledge was plainly admissible.  Because the dictation notes and the reports were independently admissible, her testimony was cumulative with respect to the case history.

[9] The findings issued some two and one-half years from first date mother testified.  However, the mother concluded her

Although delay is never to be desired, this delay was not so prolonged as to "strain[] the outer limits of any judge's ability to remember witness demeanor and credibility." Adoption of Rhona, 57 Mass. App. Ct. 479, 486 (2003).  The mother has not indicated in any meaningful way how the delay affected the judge's findings or conclusions.  For this reason, the mother has not persuaded us that the delay in issuing written findings materially prejudiced the fact finding process.

Decree affirmed.

---

testimony and the evidence closed on January 18, 2017.  The decree issued on February 21, 2017.  The mother filed her notice of appeal on March 10, 2017, and the judge issued his findings of fact and conclusions of law one year later, on March 23, 2018.