The father appeals from a decree of the Juvenile Court finding him unfit and terminating his parental rights to his son, Wendall, rejecting the father's proposed guardianship plan, and declining to order posttermination visitation. We affirm.
Discussion. "We give substantial deference to a judge's decision ... and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
1. Dictation notes. The father first argues that the judge erred by admitting notes of three Department of Children and Families (DCF) social workers without their testimony. "The general admissibility of case work documents and court investigator reports is no longer seriously in question." Adoption of Iris, 43 Mass. App. Ct. 95, 100 n.8 (1997). See Adoption of Luc, 94 Mass. App. Ct. 565, 566-567 (2018). "[T]he public documents or official records hearsay exception authorizes admission of the record of a primary fact made by a public officer in the course of official duty." Adoption ofGeorge, 27 Mass. App. Ct. 265, 272 (1989). See 102 Code Mass. Regs. § 5.13(2)(b)(12) (1998).[3] Dictation notes fall within this exception, subject to two conditions: (1) the dictation notes must be limited to primary facts, or "redacted to exclude opinion, diagnosis or evaluation"; and (2) "opposing parties must be able to cross-examine the author of the report, should they request to do so." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 766 (1998).[4]
In this case, there were three sets of dictation notes whose authors were not present at trial to testify. Upon the father's objection, the judge explicitly limited the admission of the dictation notes to direct observations by the social workers and to party admissions made to the social workers. The father contends that the dictation notes constituted improper hearsay and were erroneously admitted for more than primary facts.[5] We disagree.
The judge properly relied on the dictation notes only for statements of "primary fact." See Adoption of George, 27 Mass. App. Ct. at 274 (primary facts are those that "can be recorded without recourse to discretion and judgment"). With regard to the direct observations, we are satisfied that the judge's limited admission properly excluded any opinions or evaluations.[6] See Care & Protection of Bruce, 44 Mass. App. Ct. at 766. In addition, the father's statements to the DCF social workers, as reported in their dictation notes, are both party admissions by the father as well as direct observations by the social workers, neither of which are impermissible hearsay. See Mass. G. Evid. § 801(d)(2) (statement is not hearsay if "[t]he statement is offered against an opposing party and ... was made by the party"); Adoption of Luc, 94 Mass. App. Ct. at 569 ; Adoption of George, 27 Mass. App. Ct. at 274. We conclude that the judge did not abuse his discretion.
On appeal, the father argues that he did not have the opportunity to cross-examine the authors of the dictation notes.[7] This argument is waived, as the father's counsel did not object on the basis of his inability to cross-examine the social workers and where he did not attempt to subpoena them. See Adoption of Kimberly, 414 Mass. 526, 534-535 (1993). Moreover, with regard to the father's statements, the father could have questioned the source of his own statements by testifying, an opportunity that he relinquished when he did not appear at trial.
Even if it were error to admit the notes for primary facts and party admissions, it was not prejudicial. The notes supported only sixteen out of the total 229 findings of fact. Moreover, thirteen of those sixteen findings pertained to the father's fitness before he stipulated to his unfitness on November 17, 2015. The three remaining facts were favorable to the father and not critical to the judge's conclusion. Thus, even if the sixteen findings were struck, the judge's ultimate conclusion is still supported by clear and convincing evidence.
2. Assessment of competing placement plans. The father next argues that the judge applied the wrong legal standard when comparing the father's guardianship plan to the plan of DCF. In the case of a proposed adoption plan, "[t]he judge's obligation to 'consider' a plan involves much more than simply examining it. The judge must perform a 'careful evaluation of the suitability' of the plan and must 'meaningfully ... evaluate' what is proposed to be done for the child." Adoption of Dora, 52 Mass. App. Ct. 472, 475 (2001), quoting Adoption of Lars, 46 Mass. App. Ct. 30, 31 (1998), S.C. 431 Mass. 1151 (2000). A judge's determination of custody must be based on the best interests of the child, after an "even-handed" assessment of the evidence. Adoption of Hugo, 428 Mass. 219, 226 n.8 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).
In this case, the father's proposed plan was for a guardianship with the child's paternal grandmother and paternal aunt, without termination of the father's rights. The proposed guardians filed a guardianship petition in the Juvenile Court, and both were present at the care and protection proceeding and the guardianship hearing.[8] DCF's plan was adoption by the child's preadoptive family.[9] The trial judge concluded that it was in the best interests of the child to deny the petition for guardianship and approve DCF's adoption plan.
On appeal, the father contends that the judge abused his discretion by starting from the premise that DCF's plan was in the child's best interests, and thus, the judge improperly placed the burden on the father to prove that his plan was in the child's best interests. The father relies on three statements made by the judge to support his contention.[10] We address each statement in turn, and after careful evaluation of the record and the judge's conclusions of law, we conclude that the judge used the correct burden of proof and did not abuse his discretion in adopting DCF's adoption plan over the father's guardianship plan.
First, the father points to two statements in the judge's order: (1) "[The paternal aunt] was willing to defer her own personal goals, such as attending college, if necessary to care for all three children.[11 ] While the Court acknowledges and appreciates [her] willingness, it does not necessarily mean it is in [the child's] best interest to be removed from the only home he has ever known"; and (2) "The Court does not find that sufficient evidence was presented to show that it would be in [the child's] best interest to be removed from the [preadoptive] home." Second, the father points to a statement made during the guardianship hearing wherein the judge told the guardianship petitioners that they had the burden of proof to convince the judge, by a preponderance of the evidence, that their guardianship plan was in the best interests of the child. The judge, at the outset of his written analysis, stated the correct standard for evaluating competing plans[12] and properly applied that standard to the findings of fact. The judge considered, among other factors, one guardianship petitioner's prior history with DCF and concerns surrounding the child's older brother's guardianship with the guardianship petitioners, as well as the child's bond with his current preadoptive family. Taken in context with the judge's well-reasoned analysis, we conclude that the judge did not improperly shift the burden to the father.
3. Visitation order. Posttermination and postadoption visitation orders must be "grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent." Adoption of Vito, 431 Mass. 550, 562 (2000). See Adoption of Ilona, 459 Mass. at 63. Here, the judge left the possibility of child-parent visitation to the discretion of the child's legal custodians. The judge's subsidiary findings amply support that decision. The child resided with the preadoptive family since he was discharged from the hospital after birth. The father only engaged in limited visitation when it was made available to him, and he did not visit in the three months leading up to trial. The evidence does not indicate that there is a "significant, existing bond" between the child and the father. Id. at 63-64, quoting Adoption of Vito, 431 Mass. at 563.
Decree affirmed.

The father argues that the dictation notes are inadmissible hearsay, in part, because DCF regulations then applicable did not require social workers to maintain the notes offered in this case. We disagree. Section 5.13(2)(b)(12) of 102 Code Mass. Regs. required case workers to maintain "case notes documenting contacts and services set forth in 102 [Code Mass. Regs. §§] 5.05(1) and (3), 5.06, and 5.07" for each child. After trial, 102 Code Mass. Regs. § 5.13(2) was superseded by 606 Code Mass. Regs. § 5.12(2) (2018).

The father, DCF, and the child all cite to Adoption of George, 27 Mass. App. Ct. at 273-274, which allows dictation notes to be admitted as long as "expressions of opinion, evaluation, or judgment" are excluded, but the case does not include the second condition, as articulated later in Care & Protection of Bruce, 44 Mass. App. Ct. 758, 766 (1998). We review the admissibility of the dictation notes under this two-condition test. See Adoption of Luc, 94 Mass. App. Ct. at 568.

At trial, the father's counsel objected to admitting the dictation notes on hearsay grounds. DCF argues that because the father did not object anew following the judge's decision to admit the records for limited purposes, the father should be precluded from raising this argument on appeal, as the failure to object deprived the judge of the opportunity to remedy the alleged evidentiary issue. The father's counsel's objection was sufficient to preserve the hearsay issue for appeal; thus, we consider it on the merits.

The father also argues that the dictation notes contain the transcript of a voicemail message from the child's attorney. However, the admitted notes were limited to direct observations and party admissions, so the voicemail message was not admitted and there is no finding of fact based on it.

Counsel for DCF represented that the three social workers no longer worked for DCF and that counsel had no way of contacting them.

The judge excused the guardianship petitioners for a portion of the care and protection proceeding, but he invited the paternal grandmother back into the court room to observe the testimony of a clinical social worker and early childhood developmental specialist, Shelia Corey, and provided the paternal grandmother, who appeared pro se, with the opportunity to ask questions. The paternal grandmother declined to ask any questions.

The child supported DCF's adoption plan.

In his brief, the father only identifies two statements, but we will consider the third statement, as it was offered by counsel at oral argument.

The father has three children, all of whom have been the subjects of care and protection proceedings. The paternal aunt and paternal grandmother have a guardianship over the eldest child. Wendall, the middle child, is the subject of this case and, at the time of trial, the youngest child was the subject of a separate, open care and protection case.

In his conclusions of law, the judge stated, "A 'judge also must consider parental nominations of caretakers and then determine which placement will serve the best interests of the child. ... In so doing, the judge is not to afford any particular weight to either the parents' or [DCF's] plan .... In cases where the parents have offered a competing plan, the judge must assess the alternatives and, if both pass muster, choose which plan is in the child's best interests.' Adoption of Dora, 52 Mass. App. Ct. at 474-475."