NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1204

ADOPTION OF CAMDEN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following trial in the Juvenile Court, a judge found the mother unfit to parent her son, Camden,[2] terminated her parental rights to him, and approved the plan of the Department of Children and Families (department) for the adoption of the child.  See G. L. c. 119, § 26.  The mother appeals and raises three arguments:  (1) the judge's findings of fact are not entitled to their usual deference due to a delay in their issuance; (2) the judge erroneously concluded the department had made reasonable efforts to reunify the mother and Camden; and (3) the judge erred in limiting the mother's posttermination and

---

[1] A pseudonym.

[2] "Despite the moral overtones of the statutory term 'unfit,' the judge's decision [is] not a moral judgment or a determination that [the mother] do[es] not love [Camden]." Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017).

postadoption visitation with Camden to two visits per year.  We affirm.

Delay in findings of fact.  The mother argues that the findings of fact were delayed and thus they should not be given deference.  The evidentiary portion of the trial spanned two nonconsecutive days, taking place on October 19, 2022, and November 28, 2022.  On January 5, 2023, the judge announced her decision from the bench, finding that the mother was unfit, that Camden was in need of care and protection, and that it was in his best interests to terminate the mother's parental rights.  The decree terminating the mother's parental rights entered that same day, along with the judge's written decision and order as to the termination.  The mother timely filed a notice of appeal on January 27, 2023.  On October 4, 2023, the judge issued written findings of fact and conclusions of law (findings and conclusions).  The mother argues that she was prejudiced by the almost nine-month gap between the judge's decision on January 5 and the issuance of the findings and conclusions on October 4.  See Juvenile Court Standing Order 2-18(III)(C) (judge required to transmit decision and written findings within ninety days from close of evidence).  She argues that the delay rose to the level of a violation of due process, see Care & Protection of Martha, 407 Mass. 319, 330 (1990), and given the judge's rejection of certain evidence, "stricter scrutiny" is warranted.

2

Adoption of Abby, 62 Mass. App. Ct. 816, 817 (2005).  We disagree.

Here, the judge timely announced her decision approximately thirty days after the close of evidence.  See Juvenile Court Standing Order  1-10(5).  While it is true that the findings and conclusions were issued more than ninety days after the close of evidence, "[t]he mother has not indicated in any meaningful way how the delay affected the judge's findings or conclusions." Adoption of Luc, 94 Mass. App. Ct. 565, 571 (2018), S.C., 484 Mass. 139 (2020).  See Adoption of Don, 435 Mass. 158, 170 (2001) (no violation of due process rights where parents unable to show outcome of case would have been different without delay).  Additionally, the mother has not indicated that the delay caused the judge to misremember any testimony from the trial.  See Adoption of Luc, 94 Mass. App. Ct. at 571 & n.9 (delay of one year following mother's notice of appeal not found to affect judge's findings or conclusions).

Reasonable efforts to reunify.  The mother, for the first time on appeal, claims that the department failed to make reasonable efforts at reunification as required by G. L. c. 119, § 29C.  She makes three arguments:  First, she argues that she is entitled to raise this issue now because her mental health issues were a theme that "ran through the life of the case." Second, she argues that the department did not fulfill its duty

3

to make reasonable efforts to reunify Camden with her. Finally, she argues that these duties were not fulfilled because the department did not tailor its services to her needs.

"A parent cannot raise a claim of inadequate services for the first time on appeal, as the department would not have had the opportunity to address it." Adoption of West, 97 Mass. App. Ct. 238, 242 (2020). However, where inadequate services "was a theme that ran through the life of the case," we may still review the issue. Adoption of Chad, 94 Mass. App. Ct. 828, 839 n.20 (2019). Here, the mother never formally raised a claim for inadequate services during the trial. See Adoption of West, supra at 242-243 (noting "avenues available to raise a claim of inadequate services"). However, several reports by a court appointed special advocate (CASA) expressed the concern that the mother's mental health issues would prevent her from engaging with services.[3] Additionally, the judge acknowledged that the mother's "diagnoses present a barrier to her engaging with services." As a result, we will review the issue.

---

[3] An early report from November 3, 2021, stated, "This CASA is concerned that [the mother] may need a reasonable accommodation to effectively access services. However, this CASA is worried that the process of determining such accommodation, as well as adherence to other ADA requirements related to a parent with a disability, is not being considered in providing assistance to her." The last CASA report before trial was dated October 19, 2022, and stated that "[t]his CASA is concerned that [the mother] may need a reasonable accommodation to effectively access services."

4

"The department is 'required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties.'" Adoption of West, 97 Mass. App. Ct. at 241, quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). "Where a parent, as here, has cognitive or other limitations that affect the receipt of services, the department's duty to make reasonable efforts to preserve the natural family includes a requirement that the department provide services that accommodate the special needs of a parent." Adoption of Ilona, 459 Mass. 53, 61 (2011), citing Adoption of Gregory, 434 Mass. 117, 122 (2001). "Reasonable efforts is generally understood to include accessible, available, and culturally appropriate services that are designed to improve the capacity of families to provide safe and stable homes for their children and to ensure that parents and other family members . . . are making progress on case plan goals" (quotations and citation omitted). Care & Protection of Rashida, 488 Mass. 217, 219 (2021), S.C., 489 Mass. 128 (2022). "A judge's determination that the department made reasonable efforts will not be reversed unless clearly erroneous." Adoption of West, supra at 242.

Central to the mother's argument is that the department failed to implement the recommendations[4] made by a Juvenile Court Clinic evaluator that would have to occur prior to the mother's reunifying with Camden. However, "heroic or extraordinary measures, however desirable they may at least abstractly be, are not required." Adoption of West, 97 Mass. App. Ct. at 245, quoting Adoption of Lenore, 55 Mass. App. Ct. at 278. See Adoption of Luc, 484 Mass. at 147, quoting Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) ("mother's unwillingness to adhere to [the department's] service plan, which required her to obtain treatment for her mental health challenges . . . is 'relevant to the determination of unfitness'").

The department repeatedly tried, in vain, to have the mother engage with services. The department's action plan was "in line" with the recommendations from the court clinic evaluator. The department made three Family Self Sufficiency Program referrals to set up home services and connect the mother

_____

[4] Some of these services were directed at the mother while others were directed at the department. These recommendations included the following: (1) requiring a psychiatric consultation and ongoing management, (2) implementing a Rogers monitor, (3) requiring visiting nurse services, (4) reengaging with Department of Mental Health services, (5) requiring substance abuse treatment, (6) engaging in individual therapy, and (7) engaging with ongoing intimate partner violence survivor and trauma support.

to additional services as needed, which the mother declined. The mother also refused to sign releases so the department could contact her Department of Mental Health worker directly, which was a critical component of the evaluator's recommendations.

The mother argues that the department went against its own written disability policy (policy).[5]  However, the policy is structured in the alternative, and the mother admits that the department's ongoing social worker consulted "with her supervisor and [the Area Program Manager] 'about the difficulties of having conversation and sort of being able to get the point across.'"

---

[5] This policy, no. 2022-01, effective January 18, 2022, states, in relevant part:

"If a Social Worker observes a characteristic or behavior that may indicate the presence of a disability, the Social Worker must take at least one of the following steps, but may take them all:

"(1) Ask the parent/caregiver if they would like an accommodation to assist with the observed behavior and explain what an accommodation is.

"(2) Consult with their Supervisor regarding the observation, what it could mean and potential next steps.

"(3) Consult with a Department specialist, including the Director of Disability Services, Disability Specialists, the Statewide Disability Coordinator, the Regional Disability Liaisons, or any of the Department's mental health, substance use/misuse, or medical specialists." (Emphases added.)

In the end, it cannot be said that the department failed to make reasonable efforts to have the mother engage with services in order to reunify her with Camden.  See Adoption of West, 97 Mass. App. Ct. at 241.  It was the mother's unwillingness to engage with the recommended services and follow the department's action plan that ultimately and unfortunately stymied reunification.  See Adoption of Yalena, 100 Mass. App. Ct. 542, 554 (2021).

Posttermination and postadoption visitation.  The mother argues that the judge abused her discretion in providing for only two posttermination and postadoption visits with Camden per year.  "A judge may decline to order postadoption visitation, or 'may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child.'"  Adoption of Saul, 60 Mass. App. Ct. 546, 556 (2004), quoting Adoption of Vito, 431 Mass. 550, 553 (2000).  "An order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation" (citation omitted).  Adoption of Saul, supra.  "In issuing such an order, the judge must determine that '[o]nce it [has been] established that a

8

parent is unfit, the decision whether to grant postadoption [or posttermination] visits must be left to the sound discretion of the trial judge.'" Adoption of Zander, 83 Mass. App. Ct. 363, 365 (2013), quoting Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003). "We review the judge's determination for an abuse of discretion." Adoption of Zander, supra at 365-366.

The mother claims that there was a "well-documented bond and positive relationship" between her and Camden and that "most [supervised] visits . . . have gone well." However, the mother missed a number of visits due to her hospitalization and incarceration. Additionally, the mother was not able to control Camden during some visits -- the judge credited an incident where Camden ran out of the visitation room and hit his head on the glass door of the building. Additionally, Camden, has spent more than one-half of his young life out of the mother's care, and his speech delay and allergies improved in the care of his foster parents. We conclude that there was no abuse of

discretion.

                              <u>Decree affirmed</u>.

                              By the Court (Desmond,
                                Brennan & Smyth, JJ.[6]),

                              Clerk

Entered:  August 6, 2024.

---

[6] The panelists are listed in order of seniority.